Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | ROBERT W. GETTLEMAN | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3328 | **DATE** | May 1, 2002 |
| **CASE TITLE** | Alnoraindus Burton (N82030) v. D. Evans, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The court appoints Michael E. Deutsch, 1180 N. Milwaukee Ave., Chicago, IL 60622, phone (773) 235-0070, to represent plaintiff in accordance with counsel's trial bar obligations under the District Court's Local Rules 83.11(g) and 83.37. The clerk is directed to send a copy of the court's Memorandum Opinion and Order to Mr. Deutsch.

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 0 2 2002 date docketed | |
| X | Docketing to mail notices. | | | 25 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | 02 MAY -1 PH 4:08 | date mailed notice | |
| SJA | courtroom deputy's initials | FILED TO Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALNORAINDUS BURTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No.   01 C 3328 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| D. EVANS, G. WATTS, JAMES CHRANS, ) | |
| Warden, LAMARK CARTER, Director Assist., ) | **DOCKETED** |
| C. SHELLY, Counselor, DWIGHT DRAYTON, ) | |
| Superintendent, ) | MAY 0 2 2002 |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Alnoraindus Burton, brings this complaint against officials at Joliet Correctional Center under 42 U.S.C. §1983, alleging a number of violations of his constitutional rights while he was in custody at that institution. Defendants have filed a motion to dismiss, to which plaintiff has filed a response.[1] Defendants have filed a reply to plaintiff's response.

For the following reasons, the defendants' motion to dismiss is granted in part and denied in part.

### I. Standard of Review on a Motion to Dismiss

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal notice pleading requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999). When ruling on a motion to dismiss, the court assumes that

---

[1] Plaintiff has termed his response "Plaintiff's Pro-Se Motion in Opposition to the Defendant's Motion to Dismiss Plaintiff's Complaint." The court will refer to it as his response.

well-pleaded allegations are true and draws all reasonable inferences in the light most favorable to the plaintiff. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999), *cert. denied*, 530 U.S. 1234 (2000). This rule has particuiar force when considering the allegations of a *pro se* complaint, which are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accordingly, *pro se* complaints are to be liberally construed. *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988).

However, while it is often said that a claim may be dismissed only if, as a matter of law, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)), the Seventh Circuit has observed that this maxim "has never been taken literally." *Kyle v. Morten High School*, 144 F.3d 448, 455 (7th Cir. 1998) (*quoting Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir. 1984)). All plaintiffs – whether *pro se* or represented – must include in the complaint allegations concerning all material elements necessary for recovery under the relevant legal theory. *Chowla v. Klapper*, 743 F. Supp. 1284, 1285 (N.D. Ill. 1990).

**II. Facts**

The facts, as stated by the plaintiff in his §1983 complaint dated April 30, 2001, and viewed in a light most favorable to him:

Plaintiff was placed in protective custody at Joliet Correctional Center on April 30, 1999. He had requested this placement in 1998 but was not approved until April 30, 1999. While he waited to be placed in protective custody, he was denied access to the law library, job

assignment, recreation, access to religious services, and cleaning supplies to clean his cell. On May 15, 1999, his toilet backed up and he was exposed to sewage.

On May 4, 1999, he was playing basketball when he got into an altercation with another inmate, Sutherland, who became upset when he lost the basketball game. (Note: On his grievance report, dated July 14, 1999, plaintiff states that this incident happened on April 5, 1999. On a grievance report dated December 9, 1999, plaintiff changed the date to May 4, 1999.) Sutherland pushed plaintiff, "saying that he didn't like me." Plaintiff heard Officer Watts say "Walk away." As plaintiff was walking away, Sutherland picked up a brick and hit plaintiff in the face. The injury caused plaintiff to lose his vision in his left eye and also has caused dizziness and headaches.

Plaintiff was taken to the health care unit and then returned to protective custody. He was scheduled to see an eye doctor on May 7, but Officer Evans told him it was not an emergency, and that it did not "look like i was dieing" [sic]. Plaintiff therefore claims he was denied access to the doctor. On May 6, he received a disciplinary report charging him for the May 4 incident. He claims that he "remained untreated" for his injury until May 15, when an eye doctor examined him and gave him medications for his headaches and the swelling in his eye. He states that he was scheduled for further treatment on May 21 but does not state that he was in fact seen on that date. He states that he was seen again by an "optician" on June 11, given eye drops to reduce swelling, and told to return in three weeks. On June 30, July 6, July 9, and July 23, he saw the eye doctor again. On August 16, he was sent to Stateville to see another eye doctor, who said he could not help plaintiff and recommended that he be examined at the University of Illinois hospital. On September 22, he was sent to that hospital and examined by another doctor, who

3

recommended a CT-scan. Plaintiff had the CT-scan at the University of Illinois on October 20. Plaintiff does not state what the result of that CT-scan was. On December 20, he was examined by a different doctor at the university, who said that plaintiff might have nerve damage and referred him to a "nerve doctor." On February 2, 2000, he was seen by this nerve doctor, who told plaintiff he had nerve damage and his loss of vision was permanent. The doctor also ordered tinted sunglasses for him because glare and lights were the cause of plaintiff's headaches. On March 3, he received eyeglasses. Plaintiff adds that he wrote letters noting that he was scheduled to return to the eye doctor at the university (on March 30, 2000, to the warden, and on July 14, 2000, to the health care unit at Joliet), both of which were unanswered.

Plaintiff's complaint requests compensation for a number of reasons, in particular his being denied various kinds of access, his being left in a cell without a working toilet, his not receiving protection from another inmate, and his being denied medical treatment.

In his response, plaintiff has made several more specific claims. He states in that document that the defendants were deliberately indifferent to his need for safety and failed to protect him from harm because they failed to take disciplinary or precautionary actions against Sutherland when "they witnessed him aggressively advance plaintiff in a threatening manner after he threatened to 'kick plaintiff's ass' and picked up a brick and hitting plaintiff in his head.." He also states that he was denied medical treatment, and that this denial by Officer Evans amounted to deliberate indifference to plaintiff's serious medical injuries. He states that when he was taken to the health care unit on May 4, 1999, he received an x-ray for his head injury, but the optician was not in. Plaintiff claims that he was scheduled for examination by the optician on May 7, 1999, but that Officer Evans did not permit plaintiff to see the optician until May 15.

4

Plaintiff submitted an emergency grievance to defendant Warden Chrans concerning this denial of medical treatment, but this grievance went unanswered.

### III. Analysis

The major issue in this case is whether any of the defendant prison officials can be held liable for deliberate indifference because they exposed plaintiff to 'a sufficiently substantial risk of serious damage to his future health.' *Farmer v. Brennan*, 511 U.S. 825, 843 (1994), quoting *Helling v. McKinney*, 509 U.S. 25 (1993). One subissue stems from the course of treatment for an injury to plaintiff's eye that arose out of an attack by another inmate. A second subissue stems from the alleged failure to protect plaintiff from the other inmate.

Other issues in this case include plaintiff's claims that he was denied access to the courts, that he was denied access to programs and activities, that he was denied cleaning supplies with which to clean his cell, that his malfunctioning toilet was not repaired promptly, and that his First Amendment rights regarding religion were violated.

1. <u>Plaintiff's claim that he was denied access to the courts</u>

In his original complaint, plaintiff claims that he was denied access to the courts because during the period of incarceration up until April 30, 1999, he was denied access to the prison law library and denied the assistance of a paralegal. He expanded on this claim in his response, in which he states that he was denied access to the law library, assistance of the library paralegal, and delivery to his cell of any law books or other materials with which to research meaningful case law on the issues raised in his criminal appeal. He claims that as a result, he was unable to "supplement" his appellate brief and his appeal was denied. He cites as legal support *Bounds v. Smith*, 430 U.S. 817, 821 (1977).

5

As the defendants have noted, the *Bounds* ruling requires only that a person have a reasonably adequate opportunity to present claimed violations of constitutional rights. *Id.* at 825. In a more recent ruling, the United States Supreme Court has stated that there is no "abstract, freestanding right to a law library or legal assistance...."*Lewis v. Casey*, 518 U.S. 343, 351 (1996). The Constitution requires only that prisoners be able to present their grievances to the courts, not that they be able to conduct generalized research. *Id.* at 360.

It is clear that an appellate brief was filed with the Illinois Appellate Court on plaintiff's behalf, and this filing is evidence that plaintiff did have access to that court and therefore had a reasonably adequate opportunity to present his claims in that venue. His claim that he was denied the opportunity to file a "supplement" to that brief does not require a different outcome.

Plaintiff also alleges that he was unable to bring before this court his claims that certain constitutional rights were violated (see a description of the specific alleged violations in Section 2 below). But plaintiff has had a reasonably adequate opportunity to present his claims in this venue. The fact that this court is now considering his allegations demonstrates that his efforts in this court have not been compromised by any denial of access to a law library or legal assistance.

For these reasons, plaintiff's claim of denial of access to the courts is dismissed.

2.  Plaintiff's claim that he was denied a number of other constitutional rights between October 1998 and November 1999

a. Plaintiff's claim that he was denied recreation and exercise in the prison gym and yard.

Plaintiff cites *Preston v. Thompson*, 589 F.2d 300 (7th Cir. 1978), in support of his claim that he should have been provided with recreation and exercise between October 1998 and November 1999. But *Preston* is inapplicable here. The question in *Preston* was whether the

6

district judge abused his discretion when he ordered that prison officials provide a daily hour of yard recreation to inmates at a prison where tensions following a riot had subsided. Thus, the focus there was on how prison officials should respond when a "deadlock" following a riot had been ordered. The court in *Preston* did not discuss the general question of allowing recreation and exercise.

Although plaintiff states that for a time he was placed in "administrative protective custody and...placed in a cell 24 hours a days (7) Seven days a week," he has not alleged that he has suffered any serious threat to his health as a result of this alleged denial of recreation and exercise (he claims only cramps and stiff muscles). The court is therefore not compelled to view this claim as one rising to the level of a constitutional violation. *See Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996).

b. and c. Plaintiff's claim that he was denied <u>educational and vocational</u> opportunities.

Plaintiff cites *Bono v. Saxbe*, 620 F.2d 609, 614 (7th Cir. 1980), and *Newman v. Alabama*, 559 F.2d 283, 291 (5th Cir. 1977), in support of this claim. But the Seventh Circuit has ruled that in light of the United States Supreme Court's ruling in *Sandin v. Conner*, 515 U.S. 472 (1995), a prisoner does not have a protectible liberty or property interest in attending a vocational or rehabilitation program. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Rutledge v. Lane*, 215 F.3d 1330 (7th Cir. 2000). Thus, plaintiff's claim of a constitutional violation on this issue is dismissed.

d. Plaintiff's claim that he was denied cleaning supplies with which to clean his cell and that as a result, he was bitten by various insects, causing him pain and suffering, stress, and mental anguish.

Although a prisoner is entitled to be confined under humane conditions and to be provided with the basic necessities of civilized life, *Johnson v. Pelke*, 891 F.2d 136 (7th Cir. 1989), the protection guaranteed by the United States Constitution does not extend to the provision of cleaning supplies. Plaintiff has not alleged that he suffered any serious medical condition as a result of the alleged insect bites, and there is no reason to believe that the provision of cleaning supplies would have, in any event, prevented these insect bites. Accordingly, this claim is dismissed.

e. Plaintiff's claim that his plumbing malfunctioned and was not repaired promptly, forcing him to live in a cell without working plumbing and to breathe raw sewage for over 36 days.

Plaintiff states that he notified defendant Evans of the malfunction sometime after May 15, 1999, and that the problem was not addressed until he submitted a grievance on June 19, 1999. He adds that he suffered an upset stomach, headaches, vomiting, stress, and mental anguish as a result.

Any malfunctioning of plaintiff's plumbing was indeed unfortunate, but once again, the problem does not rise to the level of a constitutional violation. A similar situation arose in *Neal v. Clark*, 938 F. Supp. 484 (N.D. Ill. 1995), where a prisoner's toilet did not work properly for 20 days. The court noted that prison officials have a responsibility to provide inmates with basic necessities of civilized life, but to amount to a constitutional violation, conditions of confinement must result in extreme deprivations of these necessities. The court concluded that the temporary inconvenience and discomfort arising from a malfunctioning toilet did not rise to the level of a

constitutional violation. *Id.* At 485-87. Similarly, although plaintiff's toilet malfunctioned for 36 days, and he suffered temporary inconvenience and discomfort as a result, the toilet malfunction did not result in unconstitutional punishment. Accordingly, this claim is dismissed.

f. Plaintiff's claim that he was denied a <u>detail assignment</u>, i.e., a job in the prison, and as a result, he suffered stress and mental anguish.

A prisoner's interest in having a job is not protected as a liberty interest by the Due Process Clause. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995), holding that the Due Process Clause protects a state-created liberty interest only insofar as a deprivation of the interest would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"; *Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996) (after *Sandin*, there is no protectible liberty or property interest in a prison job).

For these reasons, this claim is dismissed for failure to allege an unconstitutional punishment.

3. <u>Plaintiff's claim that his First Amendment rights were violated when he was denied access to various religious activities.</u>

Plaintiff's response states that defendants Drayton and Chrans denied him access to religious services, including access to communal religious services, and access to staff chaplains and visiting volunteers representing religious affiliations. He claims that he suffered stress and mental anguish as a result.[2]

---

[2]Although the defendants have raised the statute of limitations on this issue, it is not clear in the complaint precisely when plaintiff was denied access to staff chaplains and religious volunteers. Because it appears that the denial may have occurred as late as November 24, 1999, the statute of limitations does not bar this claim.

9

Prison officials are "accorded wide-ranging deference" in deciding which policies are necessary to maintain institutional security. *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979). As this court noted in an opinion in a previous case brought by this plaintiff, access to communal religious services may be denied for a number of reasons, including security and other legitimate penological objectives. *Burton v. Nelson*, 1998 U.S. Dist. LEXIS 1050 (N.D. Ill. 1998). But, in that opinion, this court also noted that the inmates "had regular access to staff chaplains and visiting volunteers representing various religions." *Id.* at [24].

Here plaintiff has alleged that he was denied "access to staff chaplains or visiting volunteers representing religious affiliation," and that his First Amendment rights were therefore violated. If these allegations are true, then a First Amendment violation may have occurred. Accordingly, the defendants' motion to dismiss the amended complaint must be denied with respect to this issue.[3]

4. Deliberate Indifference

a. Failure to protect

Plaintiff argues that defendants Watts and Shelly failed to protect him from harm. Defendant Watts was a correctional officer at Joliet Correctional Center at the time of the events alleged in the plaintiff's complaint. Defendant Shelly was a counselor at Joliet at that time.

According to the plaintiff's original complaint, both Watts and Shelly witnessed the assault on the plaintiff by another inmate, Sutherland. Plaintiff states that both of these

---

[3]Although plaintiff has not identified himself as a member of any specific religion, the court follows the liberal pleading standards stated in *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and allows this claim in light of those standards. At a later point in this lawsuit, plaintiff will have to demonstrate his specific religious beliefs and how they were denied by prison officials.

10

defendants were questioned as eyewitnesses concerning the assault and "gave statements that inmate Sutherland assaulted me and proceeded to come after me as I was trying to walk away." Plaintiff also states that after Sutherland had pushed plaintiff, saying that Sutherland "didn't like him [plaintiff]," Officer Watts had said to plaintiff, "Walk away." As plaintiff began walking away, Sutherland picked up a brick and hit plaintiff in the face.

In his response, plaintiff has added that these two defendants "witnessed [Sutherland] aggressively advance plaintiff in a threatening manner after he threatened to 'kick plaintiff's ass' and picked up a brick and hitting plaintiff in his head causing injury." He states that they were deliberately indifferent to his safety "when they sat on a bench and did nothing when ... Sutherland threatened, aggressively advanced stricking [sic] at plaintiff with his hands in a fist and picking up a brick and stricking [sic] plaintiff in his head." He adds that these defendants "sat near by on a bench where they heard...Sutherland threats and witnessed his aggressive advances toward plaintiff as plaintiff retreated (never even getting up from their seats), while Sutherland attacked plaintiff, nor when plaintiff was assaulted with the brick." He alleges that these defendants were therefore "aware of the threat to plaintiff's safety and should have known that a substantial risk of harm existed."

Plaintiff's allegations, when taken in a light most favorable to him, support a conclusion that these two defendants may have been deliberately indifferent to a substantial risk of harm to plaintiff. Because prison officials have taken away a prisoner's ability to protect himself, the Constitution imposes on officials the duty to protect inmates from harm from fellow inmates. *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001). A correctional official is liable if he or she knows that an inmate faces a substantial risk of serious harm and disregards that risk by

11

failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Mayoral, id.* at 938.

Here plaintiff alleges that defendants Watts and Shelly were aware of a threat to plaintiff's safety and should have known that a substantial risk of harm existed. Plaintiff has alleged that the defendants sat on a bench and heard Sutherland's threats without taking action to intervene. Plaintiff also states that defendant Watts advised plaintiff to "walk away" from Sutherland. Thus, Watts may have been trying to prevent harm to plaintiff when he gave plaintiff this advice. It is therefore possible that Watts was aware of the danger posed by Sutherland's aggressive behavior.

Plaintiff's allegations are sufficient to raise the question whether defendants Watts and Shelly were deliberately indifferent to a substantial risk of serious harm to plaintiff. Accordingly, the defendants' motion to dismiss this claim is denied.

b. Failure to respond to plaintiff's injury

Plaintiff argues that he was denied medical treatment when defendant Evans refused to provide plaintiff with medical care during the period from May 4, when (immediately after plaintiff's injury) plaintiff was treated in the health care unit at Joliet, until May 15, when he was seen by an eye doctor, a period of eleven days. Defendant Evans was a correctional officer at Joliet at the time of the events alleged in plaintiff's complaint.

Plaintiff states that, as result of this denial of medical care, he has permanently lost vision in his left eye and suffers from blackouts and dizziness. In addition, he now must wear prescription eyeglasses.

12

Plaintiff charges specifically that he had an appointment for an examination with an eye doctor on May 7, but that defendant Evans did not allow him to have this examination, telling plaintiff that it was not an emergency and plaintiff "did not look like he was going to die."

Failure to provide medical care to a prisoner is a violation of the Eighth Amendment when the prisoner can establish a deliberate indifference to his or her serious medical injury. *Estelle v. Gamble*, 429 U.S. 97, 108 (1976). Although there is no violation of the Constitution every time a prison doctor or other official makes a mistake in diagnosing or treating a prisoner, a prison official is deliberately indifferent when he knows about but disregards an excessive risk to a prisoner's health.

According to the plaintiff, he was seen in the prison's health care unit immediately after the assault by his fellow inmate. He received an x-ray for his head injury, but the eye doctor was not in, and plaintiff was placed on the list for an examination by the eye doctor on May 7. Defendant Evans, however, allegedly refused to allow plaintiff to see the eye doctor on May 7, stating that plaintiff's problem was not an emergency and "it didn't look like i was dieing [sic]."

If the court views plaintiff's allegations in a light most favorable to him, it appears that defendant Evans showed deliberate indifference to plaintiff's eye injury. It is common knowledge that the eye is a delicate organ and that injuries to it must be treated promptly to avoid permanent damage. Plaintiff apparently was not examined by an eye doctor immediately after his injury, and was not given an appointment to see the eye doctor until three days later. For some reason unknown to the court, defendant Evans refused to allow plaintiff to have access to the doctor at that time, and plaintiff was unable to see the doctor until May 15, over a week after the

13

scheduled appointment and eleven days after the injury. These allegations therefore lead to the conclusion that defendant Evans intentionally delayed plaintiff access to needed medical care.

This case resembles two recent cases decided by the Seventh Circuit: *Wynn v. Southward*, 251 F.3d 588 (7th Cir. 2001), and *Sherrod v. Lingle*, 223 F.3d 605 (7th Cir. 2000). In *Wynn*, the court ruled that allegations that an inmate suffered bleeding, headaches, and disfigurement as a result of not having his dentures demonstrated that the inmate had a serious medical need, supporting his §1983 claims that corrections officials violated his Eighth Amendment rights when they deprived him of his dentures. In *Sherrod*, the court stated that an inmate is not required to show that he was "literally ignored" by the prison medical staff, which repeatedly refused to take an inmate to a hospital when he suffered a ruptured appendix; it was enough that the official knew of and disregarded an excessive risk to the inmate's health. "If knowing that a patient faces a serious risk of appendicitis, the prison official gives the patient an aspirin and an enema and sends him back to his cell, a jury could find deliberate indifference although the prisoner was not simply ignored." *Id.* at 611-12.

Similarly, plaintiff's allegations support his §1983 claim that defendant Evans, a corrections officer, violated plaintiff's Eighth Amendment right to get urgent and prompt medical treatment for his eye injury. Although plaintiff later received attention for this injury, including several appointments with eye specialists and CT-scans at the university hospital, it appears that the damage to his eye was by that time already done.

Because plaintiff was denied access to prompt treatment for the injury to his eye, the defendants' motion to dismiss this claim is denied.[4]

Of plaintiff's numerous claims, only three therefore remain: the claim that plaintiff was denied access to staff chaplains and religious volunteers, the claim of deliberate indifference to the risk of serious injury to plaintiff, and the claim of deliberate indifference to plaintiff's eye injury.

Plaintiff has named numerous defendants in their individual capacity. Individuals cannot be held liable in a Section 1983 action unless they caused or participated in the alleged constitutional deprivation. *Vance v. Washington*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230 (1997); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986) (*citing Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). Supervisors and others in authority also cannot be held liable for any alleged wrongdoing on the part of subordinates pursuant to the doctrine of *respondeat superior* because that doctrine does not apply to § 1983 actions. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992); *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). After considering plaintiff's claims, the court finds that the following defendant had no involvement in the remaining claims: Assistant Director Lamark Carter. Defendant Carter is therefore dismissed from this lawsuit.

---

[4] Although defendants have raised the statute of limitations on this claim, a prisoner's complaint is deemed to be filed when it is given to prison officials. Because this complaint was filed with the court on May 7, 2001, exactly two years after the alleged incident of deliberate indifference on May 7, 1999, the court will assume that the document was given to prison officials on an earlier date, and the statute of limitations therefore does not bar this claim. Further, the alleged violation continued until at least May 15, 2001.

15

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is granted in part and denied in part. The motion to dismiss is granted regarding all claims other than the three remaining claims: the claim that plaintiff was denied access to staff chaplains and religious volunteers, the claim of deliberate indifference regarding the failure to protect plaintiff from the risk of serious harm, and the claim of deliberate indifference to plaintiff's eye injury.

The following defendant is dismissed from this suit: Assistant Director Lamark Carter.

Defendants Superintendent Dwight Drayton and Warden James Chrans remain in the suit as defendants on the claim of denial of access to staff chaplains and visiting volunteers representing various religions.

Defendants Correctional Officer Gerald Watts and Counselor C. Shelly remain in the suit as defendants on the claim of deliberate indifference to the risk of serious injury to the plaintiff.

Defendant Correctional Officer D. Evans remains in the suit as defendant on the claim of deliberate indifference to the plaintiff's eye injury.

The court will appoint counsel for plaintiff pursuant to Local Rule 83.37, and will entertain a motion by counsel, after he or she has had an opportunity to investigate the facts, to file an amended complaint. This matter is set for a report on status on June 26, 2002, at 9:00 a.m. The remaining defendants need not file a responsive pleading until further order of court.

**ENTER:** **May 1, 2002**

_____
Robert W. Gettleman
United States District Judge